MARY McGURTY, PROSECUTOR, v. MAYOR AND COUNCIL OF THE CITY OF NEWARK ET AL., RESPONDENTS.

Argued November 8, 1916—Decided March 28, 1917.

1. Where the justice and legality of the claim of the widow of a policeman, against a board of police commissioners, for a pension, have been established subsequent to an adverse ruling on her claim, but which ruling was made without giving her an opportunity to be heard, and the result of which she was in ignorance except for having learned of it some time thereafter in the newspapers, and it appearing that, after learning of such adverse action, she had made endeavors to have the matter reheard, the defendant cannot invoke the equitable doctrine of estoppel or laches, based upon its manifest improper deprivation of the right of the prosecutrix to an existing legal claim, which, but for the initial error in procedure, would have been terminated in her favor.
2. Laches under any circumstances is a relative term and is invoked upon equitable considerations to prevent injustice by unsettling rights which have accrued during an interval of apparent repose, due to a claimant's inexcusable inaction.

Before Justices SWAYZE, MINTURN and KALISCH.

For the prosecutor, *Chandler W. Riker.*

For the defendants, *Harry Kalisch.*

The opinion of the court was delivered by

MINTURN, J. The writ of *certiorari* removes a resolution of the Newark board of police commissioners, refusing to pay to the prosecutrix the amount claimed to be due to her as a pension consequent upon the death of her husband, a former policeman of the city of Newark. An application is also made upon a rule to show cause for a peremptory *mandamus* upon the board of trustees of the Newark police pension fund, in the event of the determination of the *certiorari* case in her favor, requiring the payment to the prosecutrix or relator of the amount due to her in accordance with a subsequent resolution of the police commissioners. The

facts are undisputed, and are presented in a stipulation of counsel forming part of the record.

The deceased police officer, John McGurty, had served for seventeen years upon the police force, and at the time of his death was in good standing upon the force and as a member of the police pension fund.

Shortly after his death, the prosecutrix applied to the police commissioners of the city of Newark for a pension, and that body, without notice of any hearing to her, reported adversely to her claim, having first referred the matter to the police surgeon, who, without hearing the prosecutrix, reported adversely upon her claim.

The knowledge which the prosecutrix obtained of this action of the board, and its medical officer, was derived from a chance reading of the trustees' action in a Newark newspaper, and for nearly one year she remained without official notice of the disposition of her claim. The formal disallowance of the claim was not made until July 26th, 1916. In the meantime, she and her counsel were actively engaged in negotiating with the board of trustees of the police pension fund for the payment of the claim.

On December 28th, 1914, an application was made through the mediation of a charitably disposed citizen, in her behalf, to the board of police commissioners to re-open her application, and on April 26th, 1915, the application was granted and she thereafter presented her case, supported by the testimony of various witnesses, medical and otherwise, with the result that on December 15th, 1915, she was granted by resolution a pension of $650 per year. The trustees of the police pension fund refused to honor the resolution, upon the ground, *inter alia,* that the prior resolution of the board of police commissioners was a final disposition of the claim. That alleged legal barrier she seeks herewith to remove, by this writ of *certiorari,* as a precedent condition to her claim for a writ of *mandamus.*

The main contention, however, is doubtless presented in the brief of counsel for the defendant, and is based upon the fact that during the interim between the first action of the

board of police commissioners in 1912, rejecting the claim, and their final action allowing it, the personnel of the subscribers to or members of the police pension fund had been increased by the addition of one hundred and forty-eight members of the police force, whose fiscal rights as participants in the pension fund it is alleged would be inequitably and unreasonably damnified at this juncture by the allowance of this claim.

This contention would have a semblance of authority to support it as a claim of laches, upon the mere statement of the main facts, if severed from and unrelated to what the record presents, as the exact status of the prosecutrix. The record shows that the prosecutrix *in ops consilii,* vested with a property right in the fund in question, was deprived of that right without an opportunity to be heard or to present her case, and remained in ignorance of the situation until by chance she was informed of it through the public prints. That her right to participate in the fund was thus adjudicated against here without any notice to her of the fact. That the interim between the casual unofficial notice she received from a newspaper, and the granting of the writ of *certiorari,* was occupied in great part by her and her friends in an effort to have her case reopened, and an opportunity offered to her to present her case as she might have done in the first instance. That, as a result of this opportunity, an adjudication was had and her claim was allowed. The justice of her claim was thereby vindicated, and what should have been accorded to her in the first instance in the way of regular municipal procedure, was by this belated action for the first time manifested by official resolution.

The justice and legality of the claim having been thus conceded, the defendant is not now in a position to invoke the equitable doctrine of estoppel or laches, based upon its manifest improper deprivation of the right of the prosecutrix to an existing legal claim, which, but for the initial error in procedure, would, we must assume, in the light of the present status, have terminated in her favor. Laches under any circumstances, like negligence, is a relative term,

and is invoked upon equitable considerations to prevent injustice, by unsettling rights which have accrued during an interval of apparent repose, due to a claimant's inexcusable inaction. 2 *Bouv.* 1820. Specifically, its definition is synonymous with "inexcusable delay." 25 *Cyc.* 840, and cases.

Instances are presented in our reports where, *ipso facto,* lapse of time has been held not to bar the issuance of the writ in a cause otherwise meritorious. *State, Evans,* v. *Jersey City,* 35 *N. J. L.* 381; *State, Baxter* v. *Jersey City,* 36 *Id.* 188.

We are unable to characterize the delay in this instance as inexcusable in the light of the circumstances as we perceive them.

The result is that the original resolution or proceeding of the board of police commissioners, refusing the pension in question, must be set aside; and since no dispute exists as to the facts in the case involving a disputed legal status, no reason seems to exist why a peremptory writ of *mandamus* should not issue to the board of trustees of the Newark police pension fund, requiring them to pay to the relator the amount of the pension and arrears of pension to which the relator is entitled under the resolution of the board of police commissioners adopted on December 22d, 1915.